# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRADLEY EUGENE GILMORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-00054** |
| **v.** | ) | **Judge Wiseman/Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 17. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 23.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his current applications for DIB and SSI on October 17, 2006, with a

protective filing date of September 25, 2006, alleging that he had been disabled since September

19, 2006, due to epilepsy and depression. Docket No. 13, Attachment ("TR"), TR 72-76, 77-82.

Plaintiff's applications were denied both initially (TR 44, 45) and upon reconsideration (TR 46,

47). Plaintiff subsequently requested (TR 61) and received (TR 19-43) a hearing. Plaintiff's

hearing was conducted on June 25, 2009, by Administrative Law Judge ("ALJ") Jack B.

Williams. TR 19. Plaintiff and vocational expert ("VE"), Jo Ann Bullard, appeared and

testified. TR 19, 20

On September 29, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-

18. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the
>    Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity
>    since September 19, 2006, the alleged onset date (20 CFR
>    404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments:
>    epilepsy and depression (20 CFR 404.1520(c) and
>    416.920(c)).
>
> 4. The claimant does not have an impairment or combination
>    of impairments that meets or medically equals one of the
>    listed impairments in 20 CFR Part 404, Subpart P,
>    Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
>    416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the
>    undersigned finds that the claimant has the residual
>    functional capacity to perform a full range of work at all
>    exertional levels but with the following nonexertional
>    limitations: the claimant should avoid hazards; the claimant
>    is unable to perform complex work; and the claimant is
>    limited in his ability to relate to other people in that he can

2

relate only superficially rather than closely.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 30, 1960 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 19, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 11-17.

On October 30, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 5. On May 7, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which

significantly limits his or her ability to work (a "severe"
impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it
must be determined whether he or she suffers from one of the
"listed" impairments[1] or its equivalent.  If a listing is met or
equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level
impairments, it must be determined whether the claimant can
return to the job he or she previously held in light of his or her
residual functional capacity (e.g., what the claimant can still do
despite his or her limitations).  By showing a medical condition
that prevents him or her from returning to such past relevant work,
the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability,
the burden shifts to the Commissioner to establish the claimant's
ability to work by proving the existence of a significant number of
jobs in the national economy which the claimant could perform,
given his or her age, experience, education, and residual functional
capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 12.05C; 2) rejecting the opinion of Dr. Michael T. Cox; and 3) finding that Plaintiff's testimony was not entirely credible.  Docket No.18.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Meeting or Equaling Listing 12.05C

Plaintiff maintains that the ALJ erred in failing to find him disabled under Listing 12.05C. Docket No. 18. In particular, Plaintiff contends that the ALJ erroneously focused "on isolated details taken out of context and misconstru[ed] the overall import of the evidence concerning [Plaintiff's] level of intellectual functioning." *Id.* Specifically, Plaintiff argues that the ALJ failed to construe the overall import of the facts that: Plaintiff only completed the seventh grade; Plaintiff failed science, math, and social studies in fifth grade; Plaintiff received D's in math, English, spelling, language, reading, science, and social studies in seventh grade; Plaintiff's grades in eighth grade were listed as "Arbitrary"; and Plaintiff's I.Q. was reported by Dr. O'Brien to be Full Scale 69, Verbal 70, and Performance 63. *Id.*

Defendant responds that, in order for Plaintiff to meet or medically equal a Listing, every element of the Listing must be satisfied, and Plaintiff does not satisfy each of the elements required by Listing 12.05C. Docket No. 23. Specifically, Defendant argues that Plaintiff lacks the required diagnosis of mental retardation; lacks the required deficits in adaptive functioning; and has an I.Q. that exceeds the range set forth in Listing 12.05C. *Id.* Defendant argues that, accordingly, Plaintiff fails to meet or equal Listing 12.05. *Id.*

Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation, followed by four criteria, one of which must be satisfied with the criteria set forth in the introductory paragraph in order to meet or equal this Listing. *See* Listing 12.00A.

Plaintiff's only argument is that he meets the "Paragraph C" criteria of Listing 12.05. Listing

12.05C states as follows:

> *Mental retardation*: Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in
> adaptive functioning initially manifested during the development
> period; i.e., the evidence demonstrates or supports onset of the
> impairment before age 22.
>
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.
>
>    ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70
> and a physical or other mental impairment imposing an additional
> and significant work-related limitation or function.
>
>    ...

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05C.

    In the case at bar, the ALJ determined that:

> [T]he claimant may have borderline intellectual functioning.
> However, the evidence is inadequate to establish mental
> retardation and adaptive functioning including a history of work as
> a heavy equipment operator and truck driver is inconsistent with
> mental retardation [*sic*]. I see insufficient evidence to establish the
> degree of cognitive limitation alleged by the claimant.

TR 12.

    As an initial matter, in order to meet or medically equal Listing 12.05C, Plaintiff must

establish that he met all the required criteria. *See Sullivan v. Zebly*, 493 U.S. 521, 530 (1990).

The required criteria to meet or equal Listing 12.05C are: (1) significantly subaverage general

intellectual functioning, resulting from anatomical, physiological, or psychological abnormalities

which can be established by medically acceptable clinical and laboratory diagnostic techniques

(*see* 20 C.F.R. §§ 404.1508, 404.1525, 416.908, 416.925); (2) demonstrated deficits in adaptive

functioning; (3) an onset prior to age 22; (4) a valid verbal, performance, or full scale IQ of 60

through 70; and (5) a physical or other mental impairment imposing an additional and

significant work-related limitation or function.

As best the undersigned can discern, Plaintiff argues that the ALJ's failure to consider his

prior school performance records constitutes reversible error because he believes that his prior

school performance records demonstrate that he is mildly mentally retarded. Docket No. 18.

Plaintiff is correct that the ALJ did not discuss his school records, but Plaintiff proffers no legal

authority for the proposition that the ALJ is required to do so. There is no provision in Listing

12.05C which suggests that prior school performance records are a factor to be considered in the

ALJ's determination. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05C. Moreover,

Plaintiff reported that he left school to assist on his family's farm (not for mental, academic, or

social reasons), and reported that he has worked either as a heavy equipment operator or truck

driver from age 13 through the time of his accident.[2] *See, e.g.,* TR 186-92, 291-93, 382-89.

Plaintiff's assertion that the ALJ committed reversible error by not referring to Plaintiff's school

records fails.

Significantly, the record in the case at bar reflects that Plaintiff has not been diagnosed as

mentally retarded. Rather, a review of the record reveals that Plaintiff has been characterized as

---

[2]In October, 2003, Plaintiff was hit in the head by a metal bar while working. Docket No. 16. He suffered a laceration, but no loss of consciousness. *Id.* Plaintiff was taken to the hospital, where he had a CT scan with negative results, and where he received external suturing. *Id.* Plaintiff reports that, since his accident, he has suffered confusion, headaches, blurred vision, decreased strength in his left upper extremity, poor coordination, speech impairment, memory loss, and seizures. *Id.*

functioning in the "Low Average" or borderline range of intelligence. *See, e.g.,* TR 13,186-92, 291-93, 381-89.[3] Borderline intellectual functioning is less severe than mental retardation. *See Diagnostic and Statistical Manual of Mental Disorders* 684 (4th ed. 1994)(*DSM-IV*). Accordingly, Plaintiff cannot establish that he meets or equals the first criterion.

Moreover, Listing 12.05 requires that there be deficits in adaptive functioning initially manifested during the development period, *i.e.* before age 22. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05. But, as is explained below, Plaintiff has not shown that any alleged deficits in adaptive functioning initially manifested in Plaintiff before age 22.

To demonstrate that he suffers from deficits in adaptive functioning, Plaintiff contends that he engages in "basic activities" that are consistent with him being mildly mentally retarded. Docket No. 18. Defendant responds, *inter alia*, that Plaintiff's work history, social interaction, and ability to live alone and care for his personal needs demonstrates that Plaintiff does not suffer from the requisite deficits in adaptive functioning. Docket No. 17.

The ALJ determined that, because Plaintiff is able to shop independently for food and clothing, prepare simple meals like sandwiches and microwave meals, groom himself appropriately, attend to his personal hygiene, and live alone and independently, Plaintiff demonstrated only mild difficulties in his activities of daily living. TR 12. Based on Plaintiff's testimony that he spends time with his friends in person daily, talks on the phone with his friends daily, watches television, plays with his dog, visits his child twice a month, and takes his child

---

[3]Dr. Bachrach found that Plaintiff appeared to function at the "deficient to borderline intellectual skills" level, but noted that Plaintiff's efforts had not been entirely credible and that "[m]isinterpretation and/or misrepresentation of his symptoms is strongly suggested." TR 381-389.

bowling, the ALJ determined that Plaintiff experienced only mild difficulties in social functioning. *Id.*, TR 14. The ALJ further determined that, because Plaintiff reported sometimes needing reminders to take his medication; needing help counting change, using a savings account, and using a checkbook; having difficulty concentrating and focusing on finishing a task; being able to only sometimes follow a television program; and sometimes forgetting what he is doing or where he is going, Plaintiff experienced moderate difficulties in concentration, persistence, or pace. TR 12.

After reviewing the medical and testimonial evidence of record, the ALJ found that Plaintiff had described engaging in daily activities that were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." TR 14. The ALJ also found that Plaintiff's reported daily activities were "not the activities of an individual with totally disabling physical and/or mental conditions." *Id.* The ALJ's articulated rationale demonstrates that Plaintiff has failed to establish that he suffers from the requisite deficits of adaptive functioning. Accordingly, he cannot establish that he meets or equals the requirements of the introductory paragraph with the diagnostic description for mental retardation, without which he cannot establish that he meets or equals the Listing.

Plaintiff also appears to argue that he meets the C criteria of Listing 12.05C because his I.Q. (as assessed in 2004 and reported by Dr. O'Brien in 2007) falls within the required I.Q. range, and because his seizures are a physical impairment that impose additional and significant work-related limitations. Docket No. 18. As has been discussed above, in order to meet or equal a Listing, Plaintiff must satisfy all the requisite elements of that Listing. As has also been discussed above, Plaintiff has failed to do so. Because Plaintiff has failed to meet the core

requirements of the Listing, he cannot meet the Listing regardless of whether he satisfies the C criteria. Accordingly, Plaintiff's claim fails.

## 2. Weight Accorded to Opinion of Dr. Michael T. Cox

Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Michael T. Cox. Docket No. 18. Plaintiff argues that Dr. Cox assigned Plaintiff work restrictions that would not allow him to perform substantial gainful activity on a sustained basis. *Id.* Plaintiff argues that the ALJ improperly rejected Dr. Cox's assessment because the ALJ opined that Dr. Cox had based his opinion primarily on Plaintiff's subjective complaints, and because Dr. Cox assessed Plaintiff at the request of Plaintiff's disability attorney, in preparation for Plaintiff's disability claim. *Id.*

Defendant responds the ALJ properly considered Dr. Cox's opinion. Docket No. 23. Specifically, Defendant argues that the ALJ appropriately explained his reasons for not according Dr. Cox's opinion significant weight, indicating that Dr. Cox examined Plaintiff only one time at the request of his disability attorney; that Dr. Cox did not have an adequate opportunity to review all of Plaintiff's prior medical records; that Dr. Cox's opinion was inconsistent with Plaintiff's reported daily activities; and that Dr. Cox's opinion was inconsistent with the opinions of several other physicians and was unsupported by the evidence of record. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

Dr. Cox examined Plaintiff one time, on June 4, 2009, at the request of his disability attorney.  TR 303-04.  Accordingly, Dr. Cox is an examining, but not a treating, physician.  Dr. Cox's treatment notes reflect that Plaintiff reported having seizures "averaging every month," but that he had last seen a physician for his seizures one year prior.  TR 303.  Dr. Cox also noted that Plaintiff reported being "unable to work" since "no one will hire him to do any kind of a job as a truck driver" because of his seizures.  *Id.*  Dr. Cox's physical examination of Plaintiff revealed:

a WDWN male who appeared to be in no acute medical distress. BP 136/84, P 54, R 12, weight 210 lbs, height 70". Visual acuity 20/25 with both eyes, 20/70 on the left, 20/30 on the right. He is unable to hear 500, 1000 and 4000 Hertz at 40 decibels in the right ear. He is unable to hear 4000 and 2000 Hertz at 40 decibels in the left ear. HEENT exam normal selera and conjunctiva, pupillary reactions unremarkable, mouth normal, oropharynx normal. NECK supple, thyroid gland palpably normal. CHEST wall non-tender. LUNG fields are clear with any rales, rhonchi or wheezes. CARDIAC exam normal SI and S2 without murmurs, gallops, or rubs. ABDOMEN without any palpable masses, guarding organomegaly or rebound. EXTREMITIES not edematous at this time. Distal pulses well preserved. Neurologically, the patient is oriented X3, cranial nerves 2-12 intact. Motor exam revealed intact strength. The patient had normal sensation. Reflexes are normal and equal bilaterally. The patient's straight leg raising test is negative, both in the lying and seated position. Patient is able to stand on his toes, stand on his heels. He is able to balance on either foot. He is able to crouch and raise back up with minimal difficulty. He is unable to remember more than 2 of 3 objects at one minute and 1 of 3 objects at 5 minutes. His speech is somewhat slurred. Gait is unremarkable. There were no ancillary tests ordered as part of this examination.

TR 303.

On June 7, 2009, based upon his June 4, 2009 examination of Plaintiff and "10 to 12 pages of old records," Dr. Cox completed a Medical Assessment of Ability to do Work-Related Activities form regarding Plaintiff. TR 299-302; *see also* TR 304. In that assessment, Dr. Cox opined that Plaintiff's abilities to lift, carry, sit, stand, walk, push, and/or pull were not affected by his impairments, but that, because of "poorly controlled seizure disorder," Plaintiff should never climb, balance, kneel, crouch, or crawl. *Id.* Dr. Cox further opined that Plaintiff did not have any visual, communicative, environmental, or manipulative limitations. *Id.* Dr. Cox also opined that Plaintiff did not need to elevate his legs during the workday, and that Plaintiff would not be required to alternate sitting and standing to relieve pain or discomfort. *Id.* Dr. Cox,

however, also opined that Plaintiff's pain was "severe enough" to "constantly" interfere with his attention and concentration. *Id.* Dr. Cox opined that Plaintiff was capable of tolerating the work stress associated with "low stress jobs," but that he would need to take unscheduled breaks every 30 minutes as needed. *Id.* Dr. Cox additionally opined that Plaintiff's impairments were likely to produce "good days" and "bad days," resulting in his being absent from work "more than four times a month." *Id.*

The ALJ, when evaluating the evidence of record, accorded Dr. Cox's Medical Assessment little weight. TR 16. The ALJ explained:

> [I]t appears that Dr. Cox apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. In addition, Dr. Cox did not have the benefit of reviewing the other medical reports contained in the current record. Lastly, it is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

*Id.*

Plaintiff argues that there is no support for the ALJ's belief that Dr. Cox based his opinion primarily on Plaintiff's subjective complaints, because Dr. Cox's assessment was consistent with his examination and with Plaintiff's medical history. Docket No. 18. Significantly, however, Dr. Cox left entirely blank the area under question number 6 of his Medical Assessment of Ability to do Work-Related Activities form: "What medical/clinical finding(s) support your conclusions in items 1-5 above?" TR 300. Dr. Cox was explicitly asked

to note the support for his findings regarding Plaintiff's opined limitations, but failed to list any evidence whatsoever. *Id.* Because Dr. Cox provided absolutely no medical or clinical findings to support his opinion, the ALJ could properly reason that Dr. Cox based his opinion on Plaintiff's subjective complaints.

With regard to Plaintiff's argument that Dr. Cox performed a thorough examination and review of Plaintiff's history, Dr. Cox, in the last paragraph of his June 4, 2009 examination notes, indicated that Plaintiff had brought approximately 10 to 12 pages of old records that were reviewed as part of his evaluation. TR 304. Dr. Cox specifically noted that Plaintiff had seen Dr. Strickland, Dr. Sayyed, and Dr. Kaleil, and had undergone an EEG. *Id.* The undersigned notes, however, that Plaintiff's medical records consist of far greater than 10 to 12 pages. A review of 10 to12 pages of records out of Plaintiff's complete medical history, cannot, and does not, constitute a "thorough examination and review of Plaintiff's history." Additionally, a review of Dr. Cox's June 4, 2009 examination notes reveals that Plaintiff's physical examination yielded largely normal findings. TR 303-04. Dr. Cox's expressed opinion that Plaintiff's limitations would prevent him from working on a full-time sustained basis is not consistent with his largely normal examination results (or the record as a whole). Plaintiff's argument fails.

Plaintiff additionally argues that the ALJ erroneously discounted Dr. Cox's opinion based on the fact that Dr. Cox examined Plaintiff at the request of his attorney. Docket No. 18. Contrary to Plaintiff's assertion, however, the ALJ did not discount Dr. Cox's opinion because it was rendered at the request of Plaintiff's counsel. In fact, the ALJ, explicitly acknowledged that evidence gathered at the request of an attorney is "certainly legitimate and deserves due consideration." TR 16. In observing that he was aware of the circumstances surrounding the

gathering of Dr. Cox's opinion, the ALJ explained that he discounted Dr. Cox's opinion because it appeared to be based not on objective medical or clinical findings, but on Plaintiff's subjective complaints (which, as will be addressed below, the ALJ found to be less than fully credible).  *Id.* The ALJ also explained that he discounted Dr. Cox's opinion because he had not considered all the medical reports contained in the record.  *Id.*

The ALJ was entitled to properly discount Dr. Cox's opinion as it was based upon Plaintiff's subjective complaints and 10 to 12 pages of old records, and Dr. Cox's opinion was inconsistent with, and unsupported by, the evidence of record.  The ALJ considered the medical and testimonial evidence and reached a reasoned decision.  He appropriately articulated the basis for accepting and rejecting evidence, and Plaintiff's argument fails.

### 3.  Subjective Complaints of Pain

Plaintiff argues that the ALJ erred in finding that his daily activities negated the credibility of his subjective complaints regarding his seizures, headaches, and fatigue.  Docket No. 18.  Specifically, Plaintiff argues that his ability to visit with his child twice per month or play with his dog does not evidence an ability to perform substantial gainful activity.  *Id.*

Defendant responds that, while Plaintiff did, indeed, claim limitations "far in excess of those reflected in the documentary record and accepted by the ALJ," subjective allegations, standing alone, cannot sustain a finding of disability.  Docket No. 23.  Defendant argues that the ALJ properly considered the medical and testimonial evidence of record and determined that the evidence did not support Plaintiff's allegations regarding the intensity and persistence of his pain or symptoms, or that his symptoms were disabling in nature or preclusive of his ability to work. *Id.*

18

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible.  *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, ALJ found that, although Plaintiff's medically determined impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with his residual functional capacity assessment.  TR 14.  After recounting, in detail, Plaintiff's testimony regarding, *inter alia*, his injury, its resultant effects, his abilities and lack thereof, and his daily activities, the ALJ determined that Plaintiff's reported daily activities (discussed above in Plaintiff's first statement of error), were "not the activities of an individual with totally disabling physical and/or mental conditions."  *Id.*

As further support for his finding that Plaintiff's subjective complaints were less than fully credible, the ALJ also noted Plaintiff's lack of treatment for depression or mental health problems; his lack of prescription for any medication designed to treat psychiatric or mental symptoms; his non-compliance with taking Dilantin, his prescribed anti-seizure medication; his repeated refusal to be referred to a neurologist; the noted lack of "full effort" on evaluations; his "generally unpersuasive appearance and demeanor while testifying at the hearing"; and his inconsistent testimony (which the ALJ found was "inconsistent with the record as a whole and contradictory to the medical findings").  TR 14-15.

As has been demonstrated, ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating

that these factors were considered. *Id.* The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision

not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge